Slip Op. No. 20-75

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **ADEE HONEY FARMS, et al.,** |
| Plaintiffs, |
| v. |
| **UNITED STATES, et al.,** |
| Defendants. |

Before: Timothy C. Stanceu, Chief Judge

Consol. Court No. 16-00127

### OPINION AND ORDER

[Granting in part and denying in part defendants' Rule 12(b)(6) motion for dismissal of consolidated action as untimely according to statute of limitations]

Dated:  June 1, 2020

*Paul C. Rosenthal*, Kelley Drye & Warren LLP, of Washington, D.C., argued for plaintiffs Adee Honey Farms; A. H. Meyer & Sons Inc.; Mark Almeter; Jim Baerwald; Bailey Enterprises Inc.; Beaverhead Honey Co. Inc.; Bee Box Ranch; Bee Haven Inc.; Bill Rhodes Honey Company LLC; Mark T. Brady; Brian N. Hannar; Curt Bronnenberg; Browns Honey Farms; Carys Honey Farms Inc.; Charles L Emmons; Robert S. Fullerton; Clyde A. Gray; Paul Hendricks; Coy's Honey Farm Inc.; Culps Honey Farm LLC; Danzig Honey Company; Darren Cox; David W. Stroope Honey Company; Dency's Inc.; Evergreen Honey Company Inc.; Fischer's Honey Farm Inc.; Gause Honey; Mark R. Gilberts; Godlin Bees, Inc.; Grand River Honey Co., Inc.; Harvest Honey Inc.; Hiatt Honey; Bill Hurd; Ray L. Johnson, Jr; Johnston Honey Farms; Kohn, Donald; Las Flores Apiaries Inc.; Longs Apiaries Inc.; Long's Honey Farms Inc.; Mackrill Honey Farms & Sales; McCoy's Sunny South Apiaries Inc.; Merrimack Valley Apiaries Inc.; Old Mill Apiaries; Dirk W. Olsen; William H Perry; Robertson Pollination Service; Schmidt Honey Farms; Sioux Honey Association; Smoot Honey Co. Inc.; Steve E. Park Apiaries; Strachan Apiaries Inc.; Talbott's Honey; Don Wiebersiek; Wilmer Farms Inc.; Elmer J. Yaddof; Christopher Ranch, LLC; The Garlic Company; Vessel and Company, Inc.; Monterey Mushrooms, Inc.; L.K. Bowman Co., a division of Hanover Foods Corporation; A & S Crawfish; Acadiana Fisherman's Cooperative; Arnaudville Seafood Plant; Atchafalaya Crawfish Processors, Inc.; Bayou Land Seafood, LLC; Blanchard's Seafood, Inc.; Bonanza Crawfish Farm, Inc.; Cajun Seafood Distributor, Inc.; Carl's Seafood a.k.a. Dugas Seafood; Catahoula Crawfish Inc.; Choplin Seafood; CJL Enterprises, Inc. d.b.a. C.J.'s Seafood & Purged Crawfish; Crawfish Enterprises, Inc.; Harvey's Seafood; L.T. West, Inc.; Louisiana Premium Seafoods, Inc.; Louisiana Seafood Company; Phillips' Seafood; Prairie Cajun Wholesale Distributors, Inc.; Randol, Inc. a.k.a. Randol's Seafood and Restaurant; Riceland

Crawfish, Inc. a.k.a. Beaucoup Crawfish of Eunice, Inc.; Seafood International, Inc.; Sylvester's Crawfish; and Teche Valley Seafood.  With him on the briefs were *Michael J. Coursey*, *John M. Herrmann II*, *Jennifer E. McCadney*, and *Cameron R. Argetsinger* of the same firm and *Louis S. Mastriani*, Adduci, Mastriani & Schaumberg, LLP, also of Washington, D.C.

     *Beverly A. Farrell*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY. argued for defendants United States, R. Gil Kerlikowske, Commissioner of Customs, and U.S. Customs and Border Protection.  With her on the briefs were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Amy M. Rubin*, Assistant Director, *Justin R. Miller*, Attorney-in-Charge, and *Edward F. Kenny*, Trial Attorney.  Of counsel were *Suzanna Hartzell-Ballard* and *Jessica Plew*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of Indianapolis, Indiana.

     Stanceu, Chief Judge: Plaintiffs contest a decision of U.S. Customs and Border Protection ("Customs" or "CBP") under which Customs did not include a type of interest ("delinquency interest") in monetary distributions Customs made to them under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment").

     Before the court is defendants' motion to dismiss this consolidated action under USCIT Rule 12(b)(6) for failure to state a claim on which relief can be granted, arguing that the action is untimely under the applicable two-year statute of limitations.  The court grants defendants' motion in part and denies it in part.

## I. BACKGROUND

     The CDSOA, 19 U.S.C. § 1675c,[1] enacted in October 2000 and repealed in February 2006,[2] amended the Tariff Act of 1930 ("Tariff Act") to direct Customs to distribute assessed

---

[1] All citations to the United States Code are to the 2012 edition unless otherwise noted, except for citations to the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), which are citations to 19 U.S.C. § 1675c as in effect prior to repeal.  All citations to the Code of Federal Regulations are to the 2017 edition unless otherwise noted.

[2] Under the terms of the 2006 legislation repealing the CDSOA, Customs is to distribute antidumping and countervailing duties assessed on entries made before October 1, 2007, subject to certain limitations imposed in 2010.  *See* Deficit Reduction Act of 2005, Pub. L. No. 109-171, (continued . . . )

antidumping and countervailing duties to "affected domestic producers" ("ADPs"), on a federal

fiscal year basis, as compensation for certain qualifying expenditures.  An "affected domestic

producer" is a U.S. "manufacturer, producer, farmer, rancher, or worker representative" that was

a "petitioner or interested party in support of a petition with respect to which an antidumping

duty . . . or a countervailing duty order was entered."  19 U.S.C. § 1675c(b)(1).

Under the CDSOA, domestic parties who qualified as petitioners or parties in support of

a petition were identified initially by the U.S. International Trade Commission, which then

provided a list of these parties to Customs.  *Id.* § 1675c(d)(1).  Customs was required to publish

annually a notice of intent to distribute CDSOA funds for the relevant fiscal year that included

the current list and invited submissions of certifications of eligibility, each of which was required

to include, *inter alia*, a certification of qualifying expenditures.  *Id.* § 1675c(d)(2).  Distributions

for a fiscal year were required to occur within 60 days following the first day of the succeeding

fiscal year.  *See id.* § 1675c(d)(3).

### A. Plaintiffs in this Consolidated Action

The 85 plaintiffs in this consolidated action[3] are ADPs that received CDSOA

distributions under one of four antidumping duty orders (on honey, fresh garlic, preserved

mushrooms, and crawfish, all from the People's Republic of China ("China")).  Plaintiffs first

( . . . continued)

§ 7601(b), 120 Stat. 4, 154 (2006), *amended by* Claims Resolution Act of 2010, Pub. L. No. 111-291, § 822, 124 Stat. 3069, 3163 (2010), *amended by* Tax Relief, Unemployment Insurance Reauthorization & Job Creation Act of 2010, Pub. L. No. 111-312, § 504, 124 Stat. 3296, 3308 (2010) (current version at 19 U.S.C. § 1675c note).

[3] The court consolidated four cases on September 20, 2016: *Adee Honey Farms, et. al. v. United States*, Ct. No. 16-00127; *Christopher Ranch, et. al. v. United States*, Ct. No. 16-00129; *Monterey Mushrooms, Inc.*, *et. al. v. United States*, Ct. No. 16-00130; and *A & S Crawfish, et. al. v. United States*, Ct. No. 16-00131.  *See* Order, ECF No. 13.

became ADPs under the CDSOA in various fiscal years beginning in Fiscal Year 2001; Fiscal

Year 2010 was the most recent fiscal year in which any plaintiff first was an ADP and received

distributions.[4]

Fifty-six plaintiffs received distributions from duties assessed under an antidumping duty

order on honey from China. *See Notice of Amended Final Determination of Sales at Less Than*

*Fair Value and Antidumping Duty Order; Honey From the People's Republic of China*, 66

Fed. Reg. 63,670 (Int'l Trade Admin. Dec. 10, 2001).

Three plaintiffs received distributions of antidumping duties assessed on fresh garlic from

China. *See Antidumping Duty Order: Fresh Garlic From the People's Republic of China*,

59 Fed. Reg. 59,209 (Int'l Trade Admin. Nov. 16, 1994).

Two plaintiffs received distributions of antidumping duties assessed on preserved

mushrooms from China. *See Notice of Amendment of Final Determination of Sales at Less than*

*Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms From the People's*

*Republic of China*, 64 Fed. Reg. 8308 (Int'l Trade Admin. Feb. 19, 1999).

Twenty-four plaintiffs received distributions of antidumping duties assessed on crawfish

from China. *See Notice of Amendment to Final Determination of Sales at Less than Fair Value*

*and Antidumping Duty Order: Freshwater Crawfish Tail Meat From the People's Republic of*

*China*, 62 Fed. Reg. 48,218 (Int'l Trade Admin. Sept. 15, 1997).

---

[4] *See* First Am. Compl. of Adee Honey Farms, et al. (Court No. 16-127) Ex. 1
(Feb. 6, 2017), ECF No. 22 ("Honey Compl."); First Am. Compl. of Christopher Ranch, LLC, et
al. (Court No. 16-129) ¶ 2 (Feb. 6, 2017), ECF No. 24 ("Garlic Compl."); First Am. Compl. of
Monterey Mushrooms, Inc. (Court No. 16-130) ¶ 2 (Feb. 6, 2017), ECF No. 25 ("Mushrooms
Compl."); First Am. Compl. of A&S Crawfish, et al. (Court No. 16-131) ¶ 2 (Feb. 6, 2017), ECF
No. 23 ("Crawfish Compl.").

### B. Interest under the CDSOA

In administering the CDSOA, Customs treated differently two types of interest that pertain to antidumping and countervailing duties: pre-liquidation interest on under-deposited antidumping and countervailing duties that accrued pursuant to 19 U.S.C. § 1677g ("Section 1677g interest")[5] and post-liquidation interest accrued pursuant to 19 U.S.C. § 1505(d) (the aforementioned "delinquency interest," also identified herein as "Section 1505(d) interest").[6] Section 1677g interest applies only to underpayments (and overpayments) of antidumping and countervailing duties; Section 1505(d) interest applies to duties, taxes, and fees generally.[7] During the period for which plaintiffs claim entitlement to delinquency interest, Customs included Section 1667g interest, but not Section 1505(d) interest, in CDSOA distributions made to ADPs, including plaintiffs.

---

[5] "Interest shall be payable on overpayments and underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption on and after—(1) the date of publication of a countervailing or antidumping duty order under this subtitle . . . ."  19 U.S.C. § 1677g.

[6] The Tariff Act provision on delinquency interest reads as follows:

> If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b) [30 days after issuance of a bill for payment], any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary [of the Treasury] from the date of liquidation or reliquidation until the full balance is paid.  No interest shall accrue during the 30-day period in which payment is actually made.

19 U.S.C. § 1505(d).

[7] Pre-liquidation interest on duties and fees is addressed generally in 19 U.S.C. § 1505(b) ("The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund an excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation.").

Section 1677g interest arises from the process of assessing antidumping or countervailing duties.  An importer entering goods subject to an antidumping or countervailing duty order deposits estimated antidumping or countervailing duties, with such estimate typically based on the duty rate from the investigation or most recently completed annual review of the order.  *See* 19 C.F.R. § 141.101–03.  When the actual amount of antidumping or countervailing duties owed on the entry is assessed at liquidation, the importer is billed for any underpayment and the accrued Section 1677g interest on the underpayment.  *See* 19 U.S.C. § 1677g(a)

Section 1505(d) interest, or delinquency interest, arises after Customs liquidates an entry. An importer is allowed thirty days to pay the full amount owed as calculated at liquidation, which will include any ordinary duties and special duties (including antidumping and countervailing duties), taxes, fees, and interest, including any Section 1677g interest on under-deposited antidumping and countervailing duties.  19 U.S.C. § 1505(b).  Delinquency interest begins to accrue if any of that full amount remains unpaid after 30 days and continues to accrue at each 30-day interval thereafter.  *Id.* § 1505(d).

Prior to 2016, Customs deposited accrued Section 1677g interest, but not Section 1505(d) interest, into the special accounts for distributions made to ADPs under the CDSOA.  Defs.' Mot. to Dismiss 4 (Feb. 27, 2017), ECF No. 26 ("Defs.' Mot.").  In 2016, Congress required specified types of interest received after September 31, 2014 from a bond or a surety on a bond, including Section 1505(d) interest, to be deposited in the special accounts for CDSOA distributions made on or after the date of enactment, February 24, 2016.  Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 605, 130 Stat. 122, 187–88 (2016) ("TFTEA").  Plaintiffs here "assert[] claims under the CDSOA only as it existed prior to its amendment by Section 605 of the Trade Facilitation and Trade Enforcement Act of 2015,

because all of the interest at issue here was received by Customs prior to October 1, 2014." First

Am. Compl. of Adee Honey Farms, et al. (Court No. 16-127) ¶ 29, ECF No. 22 ("Honey

Compl.")[8]

### C. Proceedings in the Court of International Trade

Plaintiffs commenced their separate actions on July 15, 2016.  Summons, Ct. No. 16-

00127, ECF No. 1; Compl., Ct. No. 16-00127, ECF No. 2; Summons, Ct. No. 16-00129, ECF

No. 1; Compl., Ct. No. 16-00129, ECF No. 2; Summons, Ct. No. 16-00130, ECF No. 1; Compl.,

Ct. No. 16-00130, ECF No. 2; Summons, Ct. No. 16-00131, ECF No. 1; Compl., Ct. No. 16-

00131, ECF No. 2.  The court consolidated the four cases on September 20, 2016.  Order, ECF

No. 13.

After consolidation, defendants filed a motion to dismiss on January 9, 2017.  Defs.' Mot.

to Dismiss, ECF No. 19.  On February 6, 2017, plaintiffs filed four amended complaints.  Honey

Compl.; First Am. Compl. of Christopher Ranch, LLC, et al. (Court No. 16-129), ECF No. 24

("Garlic Compl."); First Am. Compl. of Monterey Mushrooms, Inc. (Court No. 16-130), ECF

No. 25 ("Mushrooms Compl."); First Am. Compl. of A&S Crawfish, et al. (Court No. 16-131),

ECF No. 23 ("Crawfish Compl").

Defendants filed a motion to dismiss the amended complaints on February 27, 2017.

Defs.' Mot.  Plaintiffs filed a memorandum in opposition on September 15, 2017.  Pls.' Mem. in

Opp'n to Defs.' Mot. to Dismiss, ECF No. 39 ("Pls.' Mem.").  Defendants replied in support of

---

[8] The complaints and amended complaints in the pre-consolidation cases are nearly identical, with differences pertaining to the commodities and specific ADPs at issue.  For ease of reference, the court will cite the Honey Complaint throughout this Order when discussing all amended complaints where these complaints do not differ and specifically will refer to other complaints when necessary.

their motion on September 28, 2018.  Defs.' Reply Mem. in Further Supp. Of Defs.' Mot. to

Dismiss, ECF No. 50.  The court held oral argument on May 1, 2019.

On July 24, 2019, the court ordered supplemental briefing on two issues: (1) whether the

Customs regulation implementing the CDSOA provided adequate notice of a decision not to

distribute delinquency interest to ADPs, and (2) under an assumption that Customs provided

adequate notice, the time at which plaintiffs' claims accrued.  Order, ECF No. 74.

In response to the court's inquiries, plaintiffs filed a supplemental brief in opposition to

the motion to dismiss on August 23, 2019.  Pls.' Suppl. Mem. in Opp'n to Defs.' Mot. to

Dismiss, ECF No. 76 ("Pls.' Suppl. Mem.").  Defendants filed a response on September 30,

2019.  Defs.' Resp. to Pls.' Suppl. Mem. and in Further Supp. of Defs.' Mot. to Dismiss, ECF

No. 80.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

The court exercises subject matter jurisdiction according to section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(i)(2), (i)(4).  Paragraph (i)(2) of § 1581 grants this Court

jurisdiction of a civil action "that arises out of any law of the United States providing for . . .

tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the

raising of revenue."  *Id.* § 1581(i)(2).  Paragraph (i)(4) grants this Court jurisdiction of a civil

action arising "out of any law of the United States providing for . . . administration and

enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection."  *Id.*

§ 1581(i)(4).

## B. Rule 12(b)(6) Motions

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the court assumes all factual allegations in the complaint to be true (even if doubtful in fact) and draws all reasonable inferences in a plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991). USCIT Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint need not contain detailed factual allegations, but it must plead facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## C. Plaintiffs' Claims

Plaintiffs claim that CBP's practice of not distributing Section 1505(d) interest is unlawful and seek an order directing Customs to distribute the Section 1505(d) interest they claim they should have received. Specifically, they seek delinquency interest they contend Customs should have included in annual CDSOA distributions dating all the way back to the first fiscal years for which they were eligible to receive, and did receive, distributions as ADPs. Their demands include delinquency interest collected by Customs on payments that were made by sureties, as well as importers, and also include payments of delinquency interest that were made in cases in this Court that were litigated or settled. *See, e.g.*, Honey Compl., ¶¶ 30–50. The Crawfish Complaint also sought distribution of funds from the litigation in *United States v. Great American Insurance Company of New York*, Ct. No. 09-187 (Ct. Int'l Trade 2009) ("*Great American*"); this claim has been settled and dismissed. Order (Aug. 16, 2017), ECF No. 38.

### D. Defendants' Motion to Dismiss

Defendants argue that plaintiffs' claims are barred by the applicable two-year statute of limitations.  Defs.' Mot. 5; *see* 28 U.S.C. § 2636(i) (barring an action brought under the jurisdiction of 28 U.S.C. § 1581(i) "unless commenced in accordance with the rules of the court within two years after the cause of action first accrues").  Defendants' primary argument is that all of plaintiffs' claims are time-barred, basing their argument on the September 21, 2001 publication of CBP's implementing regulation, which, defendants argue, constitutes the agency decision being challenged in this litigation.  Def's. Mot. 8–19.  Defendants argue in the alternative that even were the court to hold that plaintiffs' claims accrued each year in which plaintiffs received CDSOA distributions, the statute of limitations still would bar all claims to delinquency interest on distributions made more than two years prior to the commencement of the four actions on July 15, 2016.  Defs.' Mot. 19–23.

The court rules that defendants' motion to dismiss must be granted in part and denied in part.  Plaintiffs' causes of action are timely to the extent plaintiffs seek Section 1505(d) interest relating to CDSOA distributions occurring during the two-year period prior to their initiating their actions on July 15, 2016.  All claims for interest relating to CDSOA distributions made prior to that two-year period are barred by the statute of limitations.

### E. The Agency's Regulation Implementing the CDSOA Provided Adequate Notice of a Regulatory Decision that Delinquency Interest Would Not Be Distributed to ADPs

The CDSOA required Customs to establish a "special account" in the U.S. Treasury for each qualifying antidumping or countervailing duty order, into which Customs would deposit all duties assessed under that order and from which Customs would make distributions to ADPs on an annual, fiscal-year basis.  19 U.S.C. § 1675c(e)(1)–(e)(3).  Two provisions in the CDSOA addressed the interest to be deposited into the special accounts and distributed to ADPs.  The

CDSOA required that Customs "deposit into the special accounts, all antidumping or

countervailing duties (*including interest earned on such duties*) that are assessed after the

effective date of this section under the antidumping order or finding or the countervailing duty

order with respect to which the account was established." *Id.* § 1675c(e)(2) (emphasis added).

The statute also provided that Customs "shall distribute all funds (including *all* interest earned on

the funds) from assessed duties received in the preceding fiscal year to affected domestic

producers based on the certifications described in paragraph (2) [§ 1675c(d)(2)]." *Id.*

§ 1675c(d)(3) (emphasis added).  The CDSOA directed that Customs "shall by regulation

prescribe the time and manner in which distribution of the funds in a special account shall be

made." *Id.* § 1675c(e)(3).

      Plaintiffs allege that prior to July 2014 they did not know Customs had announced a

practice under which delinquency interest would not be distributed to ADPs.  They allege

specifically that, prior to conversations with Customs officials occurring between July 18, 2014

and July 30, 2014 regarding the *Great American* litigation, they "did not know . . . of any

specific instance" in which Customs received and did not distribute delinquency interest.  Honey

Compl. ¶¶ 12, 19–24.  Plaintiffs further allege that Customs stated in a letter dated November 14,

2014 that no delinquency interest arising from the settlement in *Great American* would be

distributed to ADPs.  *Id.* ¶ 25.  For the purpose of ruling on the motion to dismiss, the court

accepts these alleged facts as true.  *See Gould*, 935 F.2d at 1274.

      Defendants argue that the 2001 publication of CBP's implementing regulation placed

plaintiffs on notice that Customs had decided not to place collected delinquency interest in the

special accounts for distribution under the CDSOA.  Defs.' Mot. 11 (relying on 44 U.S.C.

§ 1507, under which Federal Register publication of a document generally "is sufficient to give notice of the contents of the document to a person subject to or affected by it").

Customs published a notice of proposed rulemaking (the "Proposed Rule") on June 26, 2001 on administration of the CDSOA. *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 33,920 (Dep't Treas. Customs Serv. June 26, 2001) (to be codified at 19 C.F.R. § 159.61–159.64 (2002)).  After receiving comments, Customs published a notice of final rulemaking (the "Final Rule") on September 21, 2001. *Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546 (Dep't Treas. Customs Serv. Sept. 21, 2001) (codified at 19 C.F.R. §§ 159.61–159.64, 178.2 (2002)) ("*Final Rule*").[9]  Referring to the statutory special accounts (into which antidumping and countervailing duties would be placed upon liquidation) and certain "clearing accounts" Customs also established for administering the CDSOA (into which would be placed estimated antidumping and countervailing duties deposited upon entry), the Final Rule provides that "no interest will accrue in the[] accounts."  19 C.F.R. § 159.64(e).  The provision then states: "However, statutory interest charged on antidumping and countervailing duties at liquidation will be transferred to the Special Account, when collected from the importer."  *Id.*

The regulatory provision, standing alone, informs the reader that interest on antidumping and countervailing duties "charged . . . at liquidation" will be placed into the special accounts for distribution to ADPs.  *Id.*  The reference to statutory interest "charged" on antidumping and countervailing duties "at liquidation" connotes an intent to deposit into the special accounts interest accrued under 19 U.S.C. § 1677g, which governs interest on underpaid (and overpaid) antidumping and countervailing duties that accrues up until liquidation.  *See* 19 U.S.C. § 1677g.

---

[9] The regulations at issue remain unchanged since the promulgation of the Final Rule.

It cannot correctly be read as a reference to delinquency interest under 19 U.S.C. § 1505(d), for

that type of interest is not charged at liquidation and can accrue only after liquidation has

occurred and only if the importer does not satisfy the obligation to pay the liquidated duties

within the allowed 30-day period.  *See* 19 U.S.C. § 1505(d).  In identifying for placement in the

special accounts "interest charged on antidumping and countervailing duties at liquidation," 19

C.F.R. § 159.64(e) implies, but does not expressly state, that other types of interest (such as

delinquency interest) will not be placed into the special accounts.

      The preamble accompanying the Final Rule upon promulgation also referred to the topic

of interest that will be deposited into the special accounts for distribution to ADPs.  *See Final*

*Rule*, 66 Fed. Reg. at 48,550.  In response to a question posed by a commenter on the Proposed

Rule on whether funds in the special accounts (or the related "clearing accounts" established by

the regulation) would bear interest, Customs replied as follows:

> Because Congress did not make an explicit provision for the accounts established
> under the CDSOA to be interest-bearing, no interest may accrue on these
> accounts.  Thus, only interest charged on antidumping and countervailing duty
> funds themselves, pursuant to the express authority in 19 U.S.C. 1677g, will be
> transferred to the special accounts and be made available for distribution under
> the CDSOA.

*Id.*  Two things are noteworthy about this language in the preamble.  First, unlike the regulation

to which it pertains, it contains the word "only," the plain meaning of which is to exclude all

other types of interest from the interest "transferred to the special accounts and be made

available for distribution."  *Id.*  Second, by referring expressly to 19 U.S.C. § 1677g, it refers

unambiguously to pre-liquidation interest of the type that 19 C.F.R. § 159.64(e) identified as

interest that will be deposited into the special accounts and distributed to ADPs.

      The court concludes that 19 C.F.R. § 159.64(e), when read together with the preamble

language that pertained to it, provided adequate notice of the agency's decision that no type of

interest other than Section 1677g interest would be deposited into the special accounts for

distribution to ADPs.  In both § 159.64(e) and the associated preamble language, Customs linked

the issue of what interest it had decided would be deposited into the special accounts with the

agency's decision on the issue of whether the accounts themselves will earn interest (a decision

plaintiffs do not challenge in this litigation).  While this method of drafting, which linked two

separate issues, perhaps was less than ideal, the court cannot conclude that linking the two issues

made unclear the decision on what type of interest would be deposited into the accounts.

Because delinquency interest collected according to 19 U.S.C. § 1505(d) unquestionably is

"interest," the meaning conveyed by the Final Rule is sufficiently clear to have placed interested

parties on notice of the agency's decision as to the type of interest Customs would place into the

special accounts and thereby make available for distribution to ADPs.  Plaintiffs make a number

of arguments to support their contention to the contrary.

       Plaintiffs argue that the CDSOA limited Customs to promulgating "procedural"

regulations and therefore did not allow Customs to promulgate a substantive regulation

excluding delinquency interest from distribution. Pls.' Mem. 20–21.  They maintain that

"Customs' clear exclusion of delinquency interest would have been *ultra vires*, as agency

regulations that violate the law that authorized them are void *ab initio*" (citation omitted), and

that "nothing in the CDSOA thus gave Plaintiffs fair warning that Customs would attempt to

deprive ADPs in the CDSOA regulations of their substantive right to receive collected

delinquency interest through CDSOA distributions." *Id.* at 21.  The issue before the court

relating to the instant motion is whether the Final Rule informed affected parties of what

§ 159.64(e) did, not whether the regulation was *ultra vires* in doing so.  Thus, the issue of

statutory authority for the regulation goes to the merits of this dispute, not to the question of the

timeliness of plaintiffs' claims.  The court fails to see why the issue plaintiffs raise concerning

CBP's regulatory authority should be held to have defeated the sufficiency of the notice

accomplished by Federal Register publication of the Final Rule.

Plaintiffs argue, further, that "the inclusion of 'only' in Customs' 'response' merely

further clarifies that of the three types of potential interest being discussed in that response,

'only' § 1677g interest would be distributed, because only § 1677g interest had been authorized

by statute." *Id.* at 24.  Plaintiffs continue their argument by stating that "[a]s § 1505(d) also has

been authorized by Congress by statute, and as nothing in the CDSOA itself, the CDSOA

regulations, or Customs' response in those regulations' Supplementary Information [the

preamble] indicates either Congress' or Customs' intent to exclude delinquency interest,

Customs' use of 'only' in that response could not reasonably have put Plaintiffs on notice that

Customs nevertheless would exclude § 1505(d) interest from CDSOA distribution." *Id.*  The

court interprets this argument to be that Customs did not mean to inform the public that

delinquency interest, which is not mentioned in the preamble discussion at issue, would not be

placed into the special accounts.  This argument is unconvincing because the plain meaning of

the preamble sentence in question is that Section 1677g interest is the "only" interest that will be

distributed to ADPs.  *Final Rule*, 66 Fed. Reg. at 48,550 ("[O]nly interest charged on

antidumping and countervailing duty funds themselves, pursuant to the express authority in

19 U.S.C. 1677g, will be transferred to the special accounts and be made available for

distribution under the CDSOA.").  The ambiguity upon which plaintiffs' argument would depend

is not present in that sentence.

Plaintiffs also allege ineffectiveness of regulatory notice where it is "hidden" or

otherwise would not be noticed by a reasonable and interested reader.  Pls.' Suppl. Mem. 2–8.

Citing *MCI Telecommunications Corp. v. F.C.C.*, 57 F.3d 1136, 1142 (D.C. Cir. 1995) ("*MCI Telecomms.*"), plaintiffs argue that it was impermissible for Customs to turn notice into a "game of hide and seek." Pls.' Suppl. Mem. 7. The case plaintiffs cite is not analogous. In that case, the discussion of the relevant issue was limited to a footnote in the "Background" section and appeared solely in the notice of proposed rulemaking. *MCI Telecomms.*, 57 F.3d at 1141–42. Here, the notice of final rulemaking contained a relevant regulatory provision and text in the preamble, under a heading titled "Interest," that clarified its meaning.

Finally, plaintiffs allege in their supplemental briefing that there were procedural flaws in the promulgation process of 19 C.F.R. § 159.64(e) such that the CBP's decision not to distribute delinquency interest is *void ab initio*. They argue that Customs needed to provide reasoning for its decision not to distribute delinquency interest, that material in a preamble cannot be the basis of an agency's final rule, and that the changes in the Final Rule are void as they are not the "logical outgrowth" of the Proposed Rule. Pls.' Suppl. Mem. 7–8. These arguments have to do with the legal validity of the Final Rule, not with the adequacy of the notice provided.

### F. Plaintiffs Have No Valid Claims Other than Those Relating to Application of the Regulation to Their Individual Distributions

In summary, the September 21, 2001 promulgation of the Final Rule was adequate notice of a Customs decision, set forth in § 159.64(e) thereof, that only Section 1677g interest would be distributed to ADPs. Disputing this conclusion, plaintiffs allege that government officials took actions in 2014 relating to the *Great American* litigation that gave them their first notice of CBP's practice on interest. Pls.' Mem. 28–31, *see* Honey Compl. ¶¶ 21–22. Plaintiffs view these actions as signifying the accrual of their causes of action. The court disagrees.

The claims of all plaintiffs in this litigation arose under the Administrative Procedure Act ("APA"). 5 U.S.C. § 706; *see Motion Sys. Corp. v. Bush*, 437 F.3d 1356, 1359 (Fed. Cir. 2006).

The agency regulatory action on which plaintiffs' claims are based is the Final Rule, which in
§ 159.64(e) defined and limited the type of interest that would be deposited into the special
accounts and thereby made available for distribution to ADPs.  No subsequent agency decision
repealed or modified that decision, and no government official had authority to deviate from it.
Consequently, any actions that may have been taken by a government official affecting the type
of interest paid to plaintiffs necessarily stemmed from the regulation itself.

Plaintiffs argue that even if the Final Rule provided legal notice of CBP's decision not to
distribute Section 1505(d) interest (and they do not concede that it did), the earliest plaintiffs
knew they were harmed by that decision, and thus had standing to sue, was in July 2014, when
plaintiffs who were ADPs under the antidumping duty order on crawfish from China learned as
result of the judgment in the *Great American* litigation that Customs was not distributing
delinquency interest.  Pls.' Suppl. Mem. 10.  Plaintiffs are correct that their individual causes of
action could not have accrued prior to their having acquired standing to sue, which they could
not have acquired until they knew (or had reason to know) they were adversely affected by
CBP's decision.  *See, e.g.*, *SKF USA Inc. v. U.S. Customs & Border Protection*, 556 F.3d 1337,
1348–49 (Fed. Cir. 2009), *cert. denied*, 560 U.S. 903 (2010)  ("*SKF*").  They are incorrect in
arguing that they did not acquire standing to sue until 2014.

Stated simply, each plaintiff's claim is that Customs unlawfully failed to deposit the
Section 1505(d) interest into the special accounts for distribution to ADPs to which they claim a
legal right to have received.  Their claims rest upon their interpretation of the CDSOA and
thereby raise a pure question of law.  Their interpretation of the statute is that the CDSOA
required Customs to deposit into the special accounts *all* interest Customs collected that related
to antidumping duties, including delinquency interest stemming from unpaid antidumping duties.

The Final Rule constituted adequate notice to plaintiffs that Customs had adopted an

interpretation of the statute inconsistent with their own.

Plaintiffs contend they were unaware until July 2014 of a "specific instance" in which

Customs was not distributing Section 1505(d) interest, but the Tariff Act itself, in 19 U.S.C.

§ 1505(d), made them aware that Customs has a duty to collect delinquency interest upon unpaid

duties as determined at liquidation. A comparison of the Final Rule to the CDSOA placed them

on notice that Customs had interpreted the CDSOA, and would administer the CDSOA, such that

they would be receiving only Section 1677g interest, and therefore would not be receiving

Section 1505(d) interest, in any annual CDSOA distribution. Plaintiffs are charged with

knowledge of the statutory provisions essential to their claim as well as with knowledge of the

contents of the Final Rule.

Any person with ADP status that stood to receive a CDSOA distribution at the time the

Final Rule was promulgated would have had standing to sue at that time to claim a right to

receive delinquency interest in its upcoming CDSOA distributions. *See* 5 U.S.C. § 702

("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

Because the loss of the claimed right to receive delinquency interest in the future is an injury

sufficient to confer a right to bring an APA cause of action, such a person would not have been

required to demonstrate the ripeness of its claim by establishing that it already had been deprived

of any delinquency interest. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967), *abrogated

on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Each plaintiff in this litigation,

therefore, acquired standing to challenge the Final Rule either upon promulgation of the Final

Rule or upon the first time thereafter it was placed on notice that it stood to receive a CDSOA distribution.

Plaintiffs became ADPs eligible to receive CDSOA distributions for various fiscal years, Fiscal Year 2010 being the most recent fiscal year for which any plaintiff received its first CDSOA distribution.  *See* Honey Compl. Ex. 1; Garlic Compl. ¶ 2; Mushrooms Compl. ¶ 2; Crawfish Compl. ¶ 2.  Plaintiffs seek "recovery of any and all delinquency interest CBP unlawfully withheld from each fiscal year's CDSOA distribution through 2014."  Pls.' Suppl. Mem. 8–9; *see also* Honey Compl. ¶ 29.  But because all plaintiffs filed suit on July 15, 2016, no plaintiff in this case has a timely claim challenging the regulation that accrued on the date the regulation was promulgated (September 21, 2001) or on the date the regulation first was applied to it.  All such claims became time-barred prior to the commencement of these actions.

The only issue remaining to be decided is whether all of plaintiffs' claims are time-barred or whether any of their claims survive because they accrued during the two-year period prior to their bringing these actions on July 15, 2016.

## G. Plaintiffs' Claims Challenging the Regulation Were Untimely for CDSOA Distributions Made Prior to July 15, 2014

Relying on the decision of the Court of Appeals for the Federal Circuit ("Court of Appeals") in *SKF*, plaintiffs argue that a separate cause of action accrued each year in which they were denied delinquent interest on their CDSOA distributions.  Pls.' Suppl. Mem. 12. Plaintiffs are correct.

In *SKF*, the Court of Appeals considered, and rejected, plaintiff SKF USA Inc.'s constitutional (First Amendment and Equal Protection) challenges to the "petition support" requirement in the CDSOA, 19 U.S.C. § 1675c(a), which limited ADP status to petitioners and parties in support of an antidumping or countervailing duty petition.  *SKF*, 556 F.3d at 1351–60.

In the litigation, SKF USA Inc. had sought to receive CDSOA distributions under antidumping

duty orders for Fiscal Year 2005. *Id.* at 1345.  The Court of Appeals rejected various arguments

that SKF USA Inc.'s suit was untimely, including the argument that SKF USA Inc. was required

to bring its action seeking Fiscal Year 2005 distributions within two years of the October 28,

2000 enactment of the CDSOA. *Id.* at 1348–49.  The Court of Appeals concluded in *SKF* that

SKF USA Inc. could have brought a facial challenge to the statute but could not bring its action

seeking distributions for Fiscal Year 2005 until it was on notice that duties would be available

for distribution, and knew that it had qualifying expenditures, for that fiscal year.  *Id.* at 1349.

*SKF* indicates that claims for CDSOA distributions accrue annually, as of each year's

distribution.  Court of Appeals precedent recognizes that "substantive" challenges to an agency

regulation (as opposed to procedural challenges to the method of promulgation), such as those

brought by these plaintiffs, may accrue either at the time of promulgation or the time of an

application to an aggrieved party.  *See Hyatt v. Patent & Trademark Office*, 904 F.3d 1361, 1372

(Fed. Cir. 2018).  Cases on which the Court of Appeals rested its decision in *Hyatt* reflect the

principle that an aggrieved party may make a substantive challenge to *any* application of a

regulation to it, not merely the first.  *See id.* at 1373; *Pub. Citizen v. Nuclear Regulatory

Comm'n*, 901 F.2d 147, 152 n.1 (D.C. Cir. 1990) ("[W]here the petitioner challenges the

*substantive* validity of a rule, failure to exercise a prior opportunity to challenge the regulation

ordinarily will not preclude review" (quoting *Montana v. Clark*, 749 F.2d 740, 744 n.8 (D.C. Cir.

1984), *cert. denied*, 474 U.S. 919 (1985)) (omission accepted)); *Wind River Mining Corp. v.

United States,* 946 F.2d 710, 714–15 (9th Cir. 2001) (similar).  Consistent with *SKF*, *Hyatt*, and

the decisions upon which they are based, the court concludes that these plaintiffs may challenge

the substance of CBP's regulations as applied to them with each CDSOA distribution they

received within two years prior to the commencement of their respective actions on July 15,

2016.  Therefore, those of their claims that accrued during the two-year period prior to

commencement of their actions on July 15, 2016 are timely, and those of their claims that

accrued prior to that two-year period are not.

Defendants' arguments to the contrary are not convincing.  Defendants cite *Brown Park*

*Estates-Fairfield Development Co. v. United States*, 127 F.3d 1449 (Fed. Cir. 1997) ("*Brown*

*Park*"), and *Hart v. United States*, 910 F.2d 815 (Fed. Cir. 1990), for the principle that a claim

flowing from a single event accrues from the event itself and not from the subsequent recurrence

of damage.  Defs.' Mot. 18.  These cases, which involve the question of the applicability of the

"continuing claim doctrine" to actions arising under the Tucker Act, do not speak to the issue

plaintiffs' claims raise under the statute of limitations.  *Cf. Brown Park*, 127 F.3d at 1454 (statute

of limitations is jurisdictional under Tucker Act); *Hart*, 910 F.2d at 817 (Tucker Act's statute of

limitations is strictly construed).  The principle defendants would have the court apply to this

case effectively would insulate regulations from substantive review under the APA by parties

who initially were affected by them but only in later years were harmed seriously enough to

make a judicial challenge worthwhile.  *See Functional Music, Inc. v. F.C.C.*, 274 F.2d 543, 546

(D.C. Cir. 1958) ("[U]nlike ordinary adjudicatory orders, administrative rules and regulations are

capable of continuing application; limiting the right of review of the underlying rule would

effectively deny many parties ultimately affected by a rule an opportunity to question its

validity.").

## III.  CONCLUSION AND ORDER

For the reasons discussed above, the court holds that plaintiffs' claim are time-barred,

and therefore must be dismissed, to the extent these claims seek Section 1505(d) interest on any

CDSOA distributions they received prior to July 15, 2014.  Therefore, upon all papers and

proceedings held herein, and upon due deliberation, it is hereby

     **ORDERED** that defendants' Motion to Dismiss (Feb. 27, 2017), ECF No. 26, be, and hereby is, granted in part and denied in part; it is further

     **ORDERED** that the claims of all plaintiffs seeking Section 1505(d) interest on any CDSOA distributions received prior to July 15, 2014 are dismissed as untimely according to the two-year statute of limitations of 28 U.S.C. § 2636(i); and it is further

     **ORDERED** that the parties shall consult and submit to the court, within fourteen (14) days of the date of this Opinion and Order, a joint proposed schedule or, if agreement cannot be reached, a status report on the scheduling issues to be resolved.


                                     _/s/ Timothy C. Stanceu_
                                       Timothy C. Stanceu
                                       Chief Judge


Dated:  June 1, 2020
New York, New York