**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE**

| | |
|---|---|
| **ADEE HONEY FARMS,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )    **Consol. Ct. No. 16-00127** |
| | ) |
| **UNITED STATES,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**REPLY IN SUPPORT OF PLAINTIFFS'
RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Paul C. Rosenthal
Michael J. Coursey
John M. Herrmann II
Jennifer E. McCadney
Cameron R. Argetsinger
KELLEY DRYE & WARREN, LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400

*Counsel to Plaintiffs with the exception of
Monterey Mushrooms, Inc.*

Louis S. Mastriani
ADDUCI, MASTRIANI & SCHAUMBERG,
L.L.P.
1133 Connecticut Ave., N.W.
Washington, DC 20036
(202) 467-6300

*Co-Counsel to Plaintiffs in <u>A&S Crawfish v.
United States</u>, CIT Ct. No. 16-00131*

## TABLE OF CONTENTS

I.     "All Interest" Unambiguously Means *All* Interest, Including § 1505(d) Interest .................................................................................................... 3

     A.     The Courts Have Long Held that "All," When Used as a Statutory Term, Must Be Interpreted Broadly and Inclusively as "All" .................. 3

     B.     There Are No Qualifications on "All Interest" That Restrict Its Meaning to § 1677g Interest ...................................................................... 6

          1.     "Assessed" Modifies "Duties," Not "Interest" ............................ 6

          2.     Under Customs' Regulations, Both § 1677g Interest and § 1505(d) Interest are "Assessed" .................................................. 7

          3.     "Assessed . . . under" an AD/CVD Order Modifies AD/CV Duties, Not "Interest" .............................................................. 7

          4.     "Funds" is Used Broadly in the Distribution Provision, and Includes § 1505(d) Interest .......................................................... 8

     C.     Congress' Interpretation of "All Interest" in TFTEA's Section 605 as Including § 1505(d) Interest Should be Accorded "Significant Weight" ...................................................................................................... 9

     D.     Customs Admits that It Originally Considered Distributing § 1505(d) Interest But Later Decided to Withhold It Due to Its Technical Inability to Do This ................................................................ 10

II.     Even Were "All Interest" Ambiguous, Customs' Reading Would Be Owed No Deference .............................................................................................. 11

     A.     Congress Did Not Delegate Customs Substantive Authority to Decide the Types of Interest It Must Distribute..................................... 11

     B.     Even Had Congress Delegated Customs the Authority to Interpret "Interest," Customs Would Have Been Required to Exercise that Authority in the Text of Its Final Rule, Not in the Rule's Preamble ....... 13

     C.     Because Customs' Interpretation of "Interest" Is Unreasonable, It Is Owed No Deference............................................................................ 16

          1.     Both § 1677g Interest and § 1505(d) Interest Accrue on Assessed but Unpaid AD/CV Duties .......................................... 16

    2.    No Public Comment on Customs' NPRM Supports the
          "Reasonableness" of its Decision to Withhold § 1505(d)
          Interest ........................................................................................ 17

    D.    Customs' Failure to Provide Any Reason for Its Decision to
          Withhold § 1505(d) Interest While Promulgating Its Final Rule
          Renders It Arbitrary and Capricious ....................................................... 18

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adee Honey Farms v. United States*,
    450 F. Supp. 3d 1365 (Ct. Int'l Trade 2020) .................................................. 13, 14, 17, 18-19

*Aqua Prods. Inc. v. Matal*,
    872 F.3d 1290 (Fed. Cir. 2017).......................................................................................14, 15

*Armour v. City of Indianapolis*,
    566 U.S. 673 (2012).........................................................................................................19, 20

*Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*,
    419 U.S. 281 (1974).................................................................................................................18

*Consol. Edison Co. of N.Y., Inc. v. Abraham*,
    314 F.3d 1299 (Fed. Cir. 2002).............................................................................................20

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016).....................................................................................................19, 20

*Facebook v. Windy City Innovations, LLC*,
    973 F.3d 1321 (Fed. Cir. 2020)............................................................................................19

*Gardner v. State of N.J.*,
    329 U.S. 565 (1947)...............................................................................................................3-5

*Gonzales v. Oregon*,
    546 U.S. 243 (2006).........................................................................................................11, 12

*Life Techs. Corp. v. Promega Corp.*,
    137 S. Ct. 734 (2017).................................................................................................................3

*MCI Telecomms. Corp. v. AT&T Co.*,
    512 U.S. 218 (1994).................................................................................................................15

*Montgomery Co. v. FCC*,
    863 F.3d 485 (6th Cir. 2017) ................................................................................................18

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29 (1983) ........................................................................................18

*National Fisheries Inst., Inc. v. United States*,
    637 F. Supp. 2d 1270 (Ct. Int'l Trade 2009) ................................................................ 12-13

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
 499 U.S. 117 (1991)..................................................................................3, 4

*Nucor Corp. v. United States*,
 927 F.3d 1243 (Fed. Cir. 2019).....................................................................15

*Pakfood Pub. Co. v. United States*,
 753 F. Supp. 2d 1334 (Ct. Int'l Trade 2011) ................................................20

*Pennsylvania Dept. of Public Welfare v. Davenport*,
 495 U.S. 552 (1990) ...................................................................................2-3

*Peter v. Nantkwest, Inc.*,
 140 S. Ct. 365 (2019) .....................................................................................3

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
 242 F.3d 1337 (Fed. Cir. 2001)...................................................................3-5

*Seatrain Shipbuilding Corp. v. Shell Oil Co.*,
 444 U.S. 572 (1980)....................................................................................8-9

*Skidmore v. Swift & Co.*,
 323 U.S. 134 (1944).......................................................................................19

*Smiley v. Citibank*,
 517 U.S. 735 (1996)................................................................................. 18-19

*Southern Shrimp Alliance v. United States*,
 617 F. Supp. 2d 1334 (Ct. Int'l Trade 2009) ................................................19

*TiVo, Inc. v. EchoStar Corp.*,
 646 F.3d 869 (Fed. Cir. 2011)........................................................................3

*U.S. Capitol Police v. Office of Compliance*,
 908 F.3d 748 (Fed. Cir. 2018).........................................................................7

*United States v. Am. Home Assur. Co.*,
 789 F.3d 1313 (Fed. Cir. 2015).................................................................3, 4

*United States v. Mead Corp.*,
 533 U.S. 218 (2001).......................................................................................10

*Williams v. United States*,
 289 U.S. 553 (1933).........................................................................................3

**Statutes and Regulations**

19 U.S.C. § 1505(d) ........................................................................................ *passim*

19 U.S.C. § 1675c(b)(4) ...................................................................................... 7-8

19 U.S.C. § 1675c(c) ...........................................................................................11

19 U.S.C. § 1675c(d)(3) .....................................................................................1, 7

19 U.S.C. § 1675c(e)(2) .........................................................................................5

19 U.S.C. § 1675c(e)(3) .......................................................................................13

19 U.S.C. § 1677g ........................................................................................ *passim*

Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"),
    19 U.S.C. § 1675c, Public Law 106-387, 114 Stat. 1549 (Oct. 28, 2000), Title
    X, which added the CDSOA as a new section (§ 754) to Title VII of the Tariff
    Act of 1930 (19 U.S.C. § 1671 et seq.), codified at 19 U.S.C. § 1675c.
    Repealed, subject to savings provision by Deficit Reduction Act of 2005, Pub.
    L. No. 109-171, § 7601, 120 Stat. 4, 154-155 (Feb. 8, 2006).  Amended by
    Claims Resolution Act of 2010, Pub. L. Nos. 109-171 § 7601(b), 111-291 §
    822 (2010), and 111-312 § 504 (2010).  Amended by Section 605 of the Trade
    Facilitation and Trade Enforcement Act of 2015, Pub. L. 114-125 (Feb. 24,
    2016). ........................................................................................................ *passim*

Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. 114-125,
    Section 605 (Feb. 24, 2016) as codified at 19 U.S.C. § 4401 ......................... *passim*

19 C.F.R. § 24.3a ...........................................................................................8, 16

19 C.F.R. § 24.3a(b)(2) .........................................................................................6

19 C.F.R. § 24.3a(c)(3) .........................................................................................6

19 C.F.R. Part 159, Subpart F ............................................................................13

19 C.F.R. § 159.61-159.64 ................................................................................ 1-2

19 C.F.R. § 159.64(e) ...............................................................................13, 14, 17

**Legislative**

Congressional Record, Feb. 11, 2016, at S843 ........................................................8

**Miscellaneous**

*Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers (Proposed Rule)*, 66 Fed. Reg. 33,920 (June 26, 2001) ("NPRM") .............. *passim*

*Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers (Final Rule),* 66 Fed. Reg. 48,546 (Sept. 21, 2001) ("NFRM") ..................................................................................................... *passim*

Reorganization Plan No. 3 of 1979, 44 Fed. Reg. 68,273 (1979) (effective as of January 2, 1980 under Exec. Order No. 12,188 of January 2, 1980, 45 Fed. Reg. 989 (1980)) (Reorganization Plan) ...........................................................12, 13

The Continued Dumping and Subsidy Offset Act of 2000 (CDSOA)[1] states that U.S. Customs and Border Protection (Customs) "*shall* distribute all funds (including *all interest* earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers [(ADPs)] . . . ." 19 U.S.C. § 1675c(d)(3) (Distribution Provision)[2] (emphasis added). Defendant (the Government) nevertheless claims in its opposition brief (Opp. Br.) (ECF No. 122) (Aug. 9, 2021) that Congress intended "all interest" to cover only preliquidation interest, which accrues under 19 U.S.C. § 1677g on the amount by which the final antidumping and countervailing (AD/CV) duties assessed at an entry's liquidation exceeds the cash deposit posted at entry (§ 1677g interest), and to exclude delinquency interest, which accrues under 19 U.S.C. § 1505(d) on assessed but unpaid AD/CV duties (§ 1505(d) interest). Opp. Br. at 19-20. The Government's claim fails on two grounds.

*First:* The Government fails to rebut the many court decisions cited by Plaintiffs in their opening brief holding that Congress' use of "all" as an adjective in a statute is to be read broadly

---

[1] *See* Public Law 106-387, 114 Stat. 1549 (Oct. 28, 2000), Title X, which added the CDSOA as a new section (§ 754) to Title VII of the Tariff Act of 1930 (19 U.S.C. § 1671 *et seq.*), codified at 19 U.S.C. § 1675c. Repealed, subject to savings provision by Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601, 120 Stat. 4, 154-155 (Feb. 8, 2006). Amended by *Claims Resolution Act of 2010*, Pub. L. Nos. 109-171 § 7601(b), 111-291 § 822 (2010), and 111-312 § 504 (2010). Amended by Section 605 of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. 114-125 (Feb. 24, 2016).

[2] The Distribution Provision provides:

> *Distribution of funds.* The Commissioner shall distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications described in paragraph (2). The distributions shall be made on a pro rata basis based on new and remaining qualifying expenditures..

19 U.S.C. § 1675c(d)(3).

as covering "all" types of the noun it modifies, or to cite any decision that deviates from this principle.  *See* Sections I.A-B, below.

*Second:* The Government fails to square its claim that its decision to withhold § 1505(d) interest from CDSOA distribution was based on its *legal* interpretation of Congress' intent with the contrary facts in the Supplemental Administrative Record (ECF No. 105) (Feb. 19, 2021) (public) (AR Supp.).  These include: (1) during Customs' promulgation of its CDSOA Final Rule (19 C.F.R. §§ 159.61–159.64), the agency initially intended to distribute both § 1505(d) and § 1677g interest under the CDSOA (AR Supp. at 511); (2) the agency decided against distributing § 1505(d) interest after its issuance of its Proposed Rule,[3] based on its undisclosed determination that its automated accounting system (Automated Commercial System, or ACS) was unable to transfer collected delinquency interest to the CDSOA special accounts instead of the General Fund of the U.S. Treasury (General Fund) (AR Supp. at 579); and (3) during its rule promulgation, Customs failed to provide the public with its actual administrative-convenience reason for withholding § 1505(d) interest from distribution, or with its alleged legal interpretation of Congress' intention regarding "all interest," both of which were not made public until many years after Customs issued its Final Rule.[4]  Opp. Br. at 37-38.  If Customs was interpreting the statute when it issued its regulation, it could have, and normally would have said so, but the record shows otherwise.

Given the Government's failures, the Court must either find under *Chevron* step one that Customs' withholding of § 1505(d) interest from CDSOA distribution is contrary to Congress'

---

[3] *See Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers (Proposed Rule)*, 66 Fed. Reg. 33,920 (June 26, 2001) ("NPRM").

[4] *See Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers*, 66 Fed. Reg. 48,546 (Sept. 21, 2001) (NFRM).

clear intent to include that interest in the distributions; or under *Chevron* step two, that the agency's decision to withhold § 1505(d) interest was arbitrary and capricious, and thus is owed no deference.  *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 842-44 (1984).

## I.    "ALL INTEREST" UNAMBIGUOUSLY MEANS *ALL* INTEREST, INCLUDING § 1505(d) INTEREST

### A.    The Courts Have Long Held that "All," When Used as a Statutory Term, Must Be Interpreted Broadly and Inclusively as "All"

The CDSOA contains no express or implied limitation on "all interest" that would warrant the Government's restrictive interpretation that it refers only to § 1677g interest.  The Government nevertheless argues that "all interest" as used in the CDSOA covers only § 1677g interest, and does not include § 1505(d) interest.  But that claim reads the word "all" out of the statue.  *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 562 (1990) (expressing "deep reluctance" to interpret statutory provisions "so as to render superfluous other provisions in the same enactment") (citing *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837 (1988)).  As Plaintiffs explained in their opening brief (MJAR Br.) (ECF No. 115) (May 24, 2021), the U.S. Supreme Court and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) have long held that "all" means all, and the word must be interpreted broadly and inclusively.  MJAR Br. at 21-23.[5]

---

[5] Plaintiffs cited eight opinions on this point: *Peter v. Nantkwest, Inc*., 140 S. Ct. 365, 372 (2019) ("the modifier 'all' … conveys breadth."); *Life Techs. Corp. v. Promega Corp*., 137 S. Ct. 734, 740 (2017) ("'All' means the entire quantity, without reference to relative importance.'"); *Williams v. United States*, 289 U.S. 553, 572 (1933) ("'The use of the word 'all' … cannot be regarded as accidental,'"); *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991) ("By itself, the phrase 'all other law' indicates no limitation."); *Gardner v. State of N.J.*, 329 U.S. 565, 573 (1947) ("The words 'all holders of claims' have no qualification and are sufficiently broad to include public agencies as well as private parties."); *United States v. Am. Home Assur. Co*., 789 F.3d 1313, 1324-25 (Fed. Cir. 2015) ("*AHAC*") ("The language – 'all

(footnote cont'd on next page)

The Government claims that "[f]or the term 'all' used in a statute to mean every kind of a particular thing, the statute in question must *not* contain language contextually providing for qualifications or limitations," and refers to four of Plaintiffs' cited "all means all" cases in support.  Opp. Br. at 20 (citing *Norfolk*, 499 U.S. at 129; *Gardner*, 329 U.S. at 573; *AHAC*, 789 F.3d at 1324-25; *SciMed*, 242 F.3d at 1344).  None of those decisions, however, holds that "all," when used as an adjective, has a limited meaning based on vague considerations of "context." The only "limitation" or "qualification" on the word "all" that the Government identifies in those cases is obvious from the plain language of the statute at issue, and is based on express wording near "all," which clearly and directly modifies "all."

For example, the Government states that while *AHAC* "holds that all bonds on which suits are commenced for the recovery of duties means bonds covering both normal and AD/CV duties, context reveals that these bonds are limited to customs bonds for duties, not in-transit or liquidated damages bonds."  Opp. Br. at 20.  That limitation is made clear not by "context," but by the statute's plain language, where "all bonds" is followed immediately by "on which suits are brought *for the recovery of duties*."  *See AHAC*, 789 F.3d at 1323 (citing 19 U.S.C. § 580). Thus, the only qualification on "all bonds" in *AHAC* is self-evident on the face of the statute and is created by express language that directly modifies "all bonds."  *Id.*

Likewise, in each of the other three of Plaintiffs' cases the Government cites, the only qualification on "all" is found in clear modifying language immediately adjacent to "all" in the

---

(footnote cont'd from previous page)
bonds' on which the government sues for 'the recovery of duties' – is clear and unqualified."); *TiVo, Inc. v. EchoStar Corp.*, 646 F.3d 869, 889 (Fed. Cir. 2011) ("Plainly, the word 'all' refers to *all* DVR functionality, infringing or not…."); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1344 (Fed. Cir. 2001) ("The words 'all embodiments of the present invention' are broad and unequivocal.  It is difficult to imagine how the patents could have been clearer in making the point….").

relevant statute or patent, so no "contextual" analysis is required.  *See Norfolk*, 499 U.S. at 129

("all other *law*") (emphasis added);[6] *Gardner*, 329 U.S. at 573 ("all holders *of claims*")

(emphasis added);[7] *SciMed*, 242 F.3d at 1344 ("all embodiments *of the present invention*")

(emphasis added).[8]   In contrast, the "all" in the CDSOA's Distribution Provision applies to

"interest," and there is no qualification there that limits "all interest" to § 1677g interest.   19

U.S.C. § 1675c(d)(3).   The only qualification on "all interest" is that it must be "earned on"

"funds . . . from assessed duties received in the preceding fiscal year," *id.* – a description that

includes both § 1677g interest and § 1505(d) interest.

---

[6] In *Norfolk* the Court found that the Interstate Commerce Act's exemption of an entity that results from an approved merger of two or more rail carriers "from the antitrust laws, and from all other law, including State and municipal law," was sufficiently broad to shield the merged carrier from prior obligations imposed by contract on the merged carriers, as well as obligations imposed by statute.  The Government claims that "although [*Norfolk*] provides 'the phrase "all other law" indicates no limitation,' contextually it is limited to law."  Opp. Br. at 20.   But the fact that the statute's exemption is limited to "law" results from the statute's language, not from an exploration beyond that language for "context."  *Norfolk*, 499 U.S. at 129.

[7] In *Gardner*, the Court held that the phrase "all holders of claims" under bankruptcy law applied to public agencies.  *Gardner*, 329 U.S. at 573.  The Government claims that, "although [*Gardner*] provides 'The words "all holders of claims" have no qualification and are sufficiently broad to include public agencies as well as private parties,' it is limited to holders who have *properly filed* claims."  Opp. Br. at 21 (emphasis added).  That a claim against the debtor will be rejected if it is filed in violation of the court's procedural rules is separate from whether that claim's owner qualifies as a "holder of claims" for the relevant statute.  *Gardner*, 329 U.S. at 573.

[8] In *SciMed*, the court found that the phrase "all embodiments of the present invention" in a patent application was broad and unequivocal.  *SciMed*, 242 F.3d at 1344.  The Government claims that, "although [*SciMed*] provides that "'all embodiments of the present invention' are broad and unequivocal," contextually it is limited to the present invention."  Opp. Br. at 21.  But the limitation to the "present invention" is self-evident from the plain text of the patent application.  *SciMed*, 242 F.3d at 1344.

**B.      There Are No Qualifications on "All Interest" That Restrict Its Meaning to § 1677g Interest**

**1.      "Assessed" Modifies "Duties," Not "Interest"**

The CDSOA contains no specific reference to either § 1677g interest or § 1505(d) interest, but instead refers to "*all* interest" in the Distribution Provision and "interest" in the Deposit Provision.[9]   The Government nevertheless contends that other words in the statute require an inference that both "interest" and "all interest" refers only to § 1677g interest.   It claims, for example, that the word "assessed" in both the Distribution Provision and the Deposit Provision "implicates a specific temporal event: liquidation," and therefore "interest" in both provisions must be interpreted as limited to interest that is "assessed" at the time of liquidation, *i.e.*, § 1677g interest.   Opp. Br. at 16.   But "assessed" in both provisions actually modifies "duties," and not "interest," which is modified by "earned on the funds," and "earned on such duties," respectively.   19 U.S.C. § 1675c(d)(3), (e)(2).   While duties are "assessed" at liquidation, § 1505(d) interest starts being "earned" on assessed duties that remain unpaid 30 days after Customs bills the duties, *i.e.*, *after* liquidation.   19 U.S.C. § 1505(d).   Thus, the CDSOA's reference to duties that are "assessed" does not restrict the "interest earned" on such duties to interest that is earned "at liquidation," *i.e.* § 1677g interest.

---

[9] The Deposit Provision provides:

> The Commissioner shall deposit into the special accounts, all antidumping or countervailing duties (including interest earned on such duties) that are assessed after the effective date of this section under the antidumping order or finding or the countervailing duty order with respect to which the account was established.

19 U.S.C. § 1675c(e)(2).

**2.  Under Customs' Regulations, Both § 1677g Interest and § 1505(d) Interest are "Assessed"**

Even if "assessed" could be read as modifying "interest," that would not limit distributable interest to interest assessed "at liquidation" – § 1677g interest – for Customs' regulations use "assessed" for the computation of both § 1677g interest and § 1505(d) interest. *See* 19 C.F.R. § 24.3a(b)(2) ("interest *assessed* due to an underpayment of duties, taxes, fees, or interest [*i.e.*, § 1677g interest] will accrue from the date the importer of record is required to deposit estimated duties, taxes, fees, and interest.") (emphasis added); 19 C.F.R. § 24.3a(c)(3) ("Interest on overdue bills [*i.e.*, § 1505(d) interest] will be *assessed* on the delinquent principal amount by 30-day periods.") (emphasis added).  As a result, "all interest" cannot be read as limited to § 1677g interest.

**3.  "Assessed . . . under" an AD/CVD Order Modifies AD/CV Duties, Not "Interest"**

The Government also argues that the Deposit Provision's phrase "assessed . . . *under*" an AD/CV order modifies "interest" as well as "duties," and thus restricts the meaning of interest to § 1677g interest, which it claims is the only type of interest that can be "assessed under" an AD order.  Opp. Br. at 17.  This argument fails, for as explained above (Section I.B.1), the Deposit Provision refers to *duties* that are "assessed . . . under" an AD order, and to *interest* that is "*earned*" on such assessed duties (which includes both § 1677g interest and § 1505(d) interest), and not to interest that is "assessed . . . under" an AD order.

The Government admits that its reading of the Deposit Provision conflicts with the Distribution Provision.  Opp. Br. at 22-23.  The phrase "assessed . . . under the [AD/CV order]" does not appear in the Distribution Provision, which broadly states that Customs "shall distribute all funds (including *all* interest earned on the funds) from assessed duties," and places no restriction on the types of interest that Customs is required to distribute.  19 U.S.C. § 1675c(d)(3)

7

(emphasis added).  If the Deposit Provision referred to a more limited category of interest than the Distribution Provision, that would preclude Customs from depositing into the Special Accounts all of the funds that Congress required Customs to distribute to ADPs under the Distribution Provision.  But "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory," and "there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously."  *U.S. Capitol Police v. Office of Compliance*, 908 F.3d 748, 759 (Fed. Cir. 2018) (citing Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (2012)).

### 4. "Funds" is Used Broadly in the Distribution Provision, and Includes § 1505(d) Interest

The Government also claims that the term "funds" as used in the Distribution Provision has a specialized meaning – *i.e.*, assessed AD/CV duties and 1677g interest – and not the "generic" dictionary definition meaning ascribed by Plaintiffs ("a sum of money"), which would include 1505(d) interest.  Opp. Br. at 19-20.  This argument depends entirely on the Government's erroneous claim that the words "assessed" and "under" limit "interest" to § 1677g interest.  In addition, the CDSOA does use the word "fund" in its generic sense, as evidenced by Congress' use of the word elsewhere in the statute.  *See* 19 U.S.C. § 1675c(b)(4) (defining "qualifying expenditure" to include "[w]orking capital or other *funds* needed to maintain production.") (emphasis added).[10]

---

[10] The Government also argues that Plaintiffs' "extreme" interpretation of "all interest" would lead to the absurd result of requiring Customs to distribute to ADPs § 1677g interest that was due to importers for overpayments on estimated duties.  Opp. Br. at 19 n.8.  But § 1677g interest that is owed to an *importer* does not constitute "funds . . . from assessed duties" or "interest earned on" such funds.  That interest instead is earned on the amount by which the importer's estimated cash duty deposit exceeded the AD/CV duties assessed at liquidation.  19 C.F.R. § 24.3a.  Therefore, it is outside the scope of what the Distribution Provision requires Customs to distribute to ADPs.

**C.**    **Congress' Interpretation of "All Interest" in TFTEA's Section 605 as Including § 1505(d) Interest Should be Accorded "Significant Weight"**

The Government also claims that, when Congress amended the CDSOA in 2016 to require Customs to distribute § 1505(d) (*see* § 605 of the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. 114-125 (Feb. 24, 2016) (Section 605)), Congress was not acting to correct Customs' misreading of "all interest" in the original CDSOA because the amendment did not apply to "all" § 1505(d) interest on entries subject to the CDSOA, but rather only to § 1505(d) interest that is (1) derived from payments made under bonds; and (2) paid after Section 605's effective date.  Opp. Br. at 11-13.

Wishful thinking is not statutory interpretation. There can be no question that the purpose of the amendment was to address Customs' unlawful interpretation of "all interest" to mean only § 1677g interest.   One of Section 605's sponsors, Senator John Thune (R-SD), explained in a floor statement that Customs' practice of withholding § 1505(d) interest "defies the plain language of the statute," and that the amendment was intended to "correct[] CBP's misreading of the law."  Congressional Record, Feb. 11, 2016, at S843.

The contemporaneous views of Section 605's sponsors are "entitled to significant weight," not only with respect to the meaning of Section 605, but also with respect to the meaning of the original statutory language.  *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 595-96 (1980) ("[W]hile the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, such views are entitled to significant weight, and particularly so when the precise intent of the enacting Congress is obscure.") (citations omitted). Thus, Congress' enactment of Section 605 is a further indication of Customs' misinterpretation of "all interest."

9

D.      **Customs Admits that It Originally Considered Distributing § 1505(d) Interest But Later Decided to Withhold It Due to Its Technical Inability to Do This**

The Government's position on *Chevron* step one that the CDSOA unambiguously requires Customs to withhold § 1505(d) interest is sharply undermined by two admissions in the administrative record and the Government's brief.

First, the Government acknowledges that distribution of § 1505(d) interest was "under consideration" by the Customs task force charged with implementing the CDSOA at the outset of the rulemaking process.  Opp. Br. at 7; AR Supp. at 511.  If the plain language of the statute was clear that only § 1677g interest was distributable, there would have been no reason for Customs' task force to consider how the agency would distribute § 1505(d) interest.  This is particularly so given the Government's argument, discussed above, that the words "assessed," "under" and "funds" have specialized, technical meanings that limit "interest" to § 1677g interest.  If the members of Customs' task force could not discern the special meanings of these words, then the words cannot have those meanings.  The task force's consideration of how to distribute § 1505(d) interest is a clear indicator of Customs' understanding that "all interest" *can* be interpreted to include § 1505(d) interest, and therefore it does not unambiguously refer exclusively to § 1677g interest.  For this reason alone, the Government cannot win on *Chevron* step one.

Second, the Government admits that the reason Customs ultimately decided to withhold § 1505(d) interest was because of the technological limitations of Customs' ACS system, which the agency found unable to redirect § 1505(d) interest from the General Fund to the CDSOA's special accounts.  Opp. Br. at 7-8, 37-38.  If the language of the CDSOA unambiguously excluded § 1505(d) interest from CDSOA distribution, then Customs' technological inability to

distribute such interest would have been wholly irrelevant to Customs' decision to withhold it. The Government's admission that the ACS system's technological limitation was the actual reason for its decision to withhold § 1505(d) interest shows that Customs knew throughout its promulgation of its CDSOA Final Rule that the statute did not unambiguously require it to withhold § 1505(d) interest, and that the legal justification the agency much later advanced for doing so was never more than a pretext.

*     *     *

Accordingly, the CDSOA unambiguously requires Customs to distribute "*all* interest" – including § 1505(d) interest – that is earned on AD/CV duties that are subject to that statute.  As a result there is no reason for the Court to consider whether the agency's position is entitled to deference under *Chevron* step two.  The Court thus should enforce the statute as written under Chevron step one, and grant Plaintiffs' motion for judgment on the administrative record.

## II.    EVEN WERE "ALL INTEREST" AMBIGUOUS, CUSTOMS' READING WOULD BE OWED NO DEFERENCE

### A.    Congress Did Not Delegate Customs Substantive Authority to Decide the Types of Interest It Must Distribute

As explained in Plaintiffs' opening brief, even if the meaning of "all interest" in the CDSOA were unclear, Congress did not leave it to Customs to decide whether § 1505(d) interest should be distributed to ADPs or retained by the Treasury.  MJAR at 32-33.  An agency's interpretation of a statute is only entitled to *Chevron* deference where Congress has delegated authority to the agency to make such interpretations.  *United States v. Mead Corp*., 533 U.S. 218, 226-27 (2001).  An agency receives no deference for statutory interpretations that exceed Congress' delegation of authority.  *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006).

The Government cites the delegation language in the CDSOA as the basis for its authority to interpret "interest."  Opp. Br. at 27.  But the CDSOA only authorizes Customs to

"prescribe *procedures* for *distribution* of the continued dumping or subsidies offset required by this section" and "by regulation prescribe the *time and manner* in which distribution of the funds in a special account shall be made."  19 U.S.C. § 1675c(c), (e)(3) (emphasis added).  On its face, this delegation of authority is ministerial, and limited to devising "procedures" for distribution, not determining the *contents* of that distribution.

*Gonzales*, which the Government fails to distinguish, is instructive.  *Compare* MJAR Br. at 32-34 *with* Opp. Br. at 27-29.  The Court there found that the Controlled Substances Act (CSA) delegated authority to the U.S. Attorney General that was limited to making rules concerning the "registration" and "control" of controlled substances, and did not extend to making substantive interpretations of ambiguous terms in the CSA unrelated to those two subjects.  *Gonzales*, 546 U.S. at 259.  On this basis, the Court declined to accord *Chevron* deference to an interpretive rule in which the Attorney General interpreted the ambiguous term "legitimate medical purpose," which the Court found was not related to either "registration" or "control" of controlled substances.  *Id.* at 253-54.

*Gonzalez* is directly applicable here because the CDSOA only authorizes Customs to make limited, procedural rules related to distribution, and not substantive determinations about which types of interest to distribute and which types to keep.  The Government argues that *Gonzales* is distinguishable because the CSA's requirements for the Attorney General to exercise his "registration" and "control" authority were more detailed than the rulemaking specifications in the CDSOA.  Opp. Br. at 28-29.  The *Gonzales* Court's finding that the Attorney General's authority was limited to "registration" and "control,"  though, was unrelated to its consideration of the statute's detailed requirements for exercising that authority, and the Court only considered those detailed requirements for the purpose of determining whether the Attorney General's

interpretation of "legitimate medical purpose" was made pursuant to that limited authority. *Gonzales*, 546 U.S. at 261.

The Government is also wrong in claiming that Reorganization Plan No. 3 of 1979 (Reorganization Plan)[11] places no limits on Customs' authority to make substantive interpretations of the CDSOA.  Opp. Br. at 30.  The Reorganization Plan restricted Customs' administration of title VII of the Tariff Act of 1930 (Title VII), as codified at 19 U.S. Code Ch. 4, Subtitle IV (Antidumping and Countervailing Duties), to the purely ministerial functions required by the title.  Reorganization Plan § 5(a)(1)(C).  Further, the CDSOA as enacted in 2000 was codified at 19 U.S.C. § 1675c, squarely within Title VII, and thus is subject to the Reorganization Plan.  *See* Reorganization Plan § 5(a)(1)(C).  The limited authority to create distribution procedures that Congress delegated to Customs in the CDSOA is fully consistent with the limited and ministerial role afforded to Customs under the Reorganization Plan.  Thus, Customs has no "general authority, or the necessary expertise, to make substantive determinations" as to the CDSOA or the rest of title VII of the Tariff Act.  *See National Fisheries Inst., Inc. v. United States*, 637 F. Supp. 2d 1270, 1293-94 (Ct. Int'l Trade 2009).

> **B.** **Even Had Congress Delegated Customs the Authority to Interpret "Interest," Customs Would Have Been Required to Exercise that Authority in the Text of Its Final Rule, Not in the Rule's Preamble**

Even if Congress had delegated authority to Customs to make substantive interpretations of the term "all interest," Customs failed to exercise that authority in a manner that would warrant *Chevron* deference.  The CDSOA requires Customs to exercise its authority "by regulation."  19 U.S.C. § 1675c(e)(3).  Where a statute authorizes an agency to act "by

---

[11] *See* 44 Fed. Reg. 69,273 (1979) (effective as of January 2, 1980 under Exec. Order No. 12,188 of January 2, 1980, 45 Fed. Reg. 989, 993 (1980)).

regulation," the agency is only entitled to *Chevron* deference for statutory interpretations that are made *in a regulation* – and not for statutory interpretations made in other contexts.  *Aqua Prods. Inc. v. Matal*, 872 F.3d 1290, 1332 (Fed. Cir. 2017) (*en banc*) (stating the common holding of a "majority of judges" on the panel).[12]

Here, Customs' "interpretation" of the CDSOA as limiting distributable interest to § 1677g interest is not set forth in the text of the CDSOA regulations, *see* 19 C.F.R. Part 159, Subpart F, but rather in the preamble to Customs' notice of final rulemaking.  *See* NFRM, 66 Fed. Reg. 48,546.  As the Court previously found, 19 C.F.R. § 159.64(e) "implies, but *does not expressly state*" that Customs planned to deposit only § 1677g interest – but not other types of interest – into Special Accounts for distribution to ADPs.  *Adee Honey Farms v. United States*, 450 F. Supp. 3d 1365, 1373 (Ct. Int'l Trade 2020).  Customs' decision to withhold § 1505(d) interest is only apparent when the Final Rule is "read together with the preamble language," which states that "only" interest charged pursuant to § 1677g will be transferred to the Special Accounts for distribution.  *Id.*

The preamble to the NFRM is not a part of the regulation.  *See N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018) ("Although the 2008 regulation was subject to notice and comment, the preamble, like the FAQs announcement, was not") (citing *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) ("It is undisputed that the preamble has not been

---

[12] *Aqua Products* was decided by an *en banc* 11-judge panel.  *Aqua Prods.*, 872 F.3d at 1290.  A seven-judge majority concurred in the holding that, where a statute authorizes an agency to act "by regulation," the agency is only entitled to *Chevron* deference for statutory interpretations that are made in a regulation, and not in other contexts.  *Id.* at 1320, 1323 (Judge O'Malley opinion, joined by Judges Newman, Lourie, Moore and Wallach) and 1338 (Judge Reyna opinion, joined by Judge Dyk).  Only two of the judges on the panel dissented from this specific holding.  *Id.* at 1359 (Judge Hughes opinion, joined by Judge Chen).  A separate dissent by Judge Taranto (joined by Prost, Chen and Hughes; joined in part by Dyk and Reyna) did not reach this issue.  *Id.* at 1342.

subjected to notice and comment."). Because a preamble cannot receive *Chevron* deference where Congress directed the agency to act "by regulation," there is no basis to defer to Customs' interpretation here. *Aqua Prods.*, 872 F.3d at 1332.

The Government fails to distinguish the Federal Circuit's controlling holding in *Aqua Products.* Opp. Br. at 29. The Government first argues, incorrectly, that *Aqua Products* is not relevant because "the Court found that the regulation at issue contravened the statute and, therefore, failed *Chevron* step one." *Id.* This is wrong. The majority of the *en banc* panel in *Aqua Products* found – on *Chevron* step *two* – that the agency's interpretation was not entitled to *Chevron* deference. *Aqua Prods.*, 872 F.3d at 1332. "A majority of judges" on the panel concurred in holding that "where a statute delegates to the Director the authority to *prescribe regulations* adopting standards, only notice and comment rulemaking by regulation will be given *Chevron* deference." *Id.* (emphasis in original).

The Government also suggests that *Aqua Products* is distinguishable because it concerned a statutory burden of proof, which is not at issue here. But that distinction is irrelevant to court's holding that where – as here – Congress delegates authority to an agency act "by regulation," it is not entitled to *Chevron* deference for pronouncements that are not made in a regulation. *Id.*

The Government further argues that Customs did, in fact, convey its decision to withhold § 1505(d) interest in its regulation and the preamble merely "clarifies" this decision. Opp. Br. at 30. But as this Court found, the text of 19 C.F.R. § 159.64(e) is silent as to whether Customs will distribute or withhold § 1505(d) interest, *Adee Honey*, 450 F. Supp. 3d at 1373, and the regulation is consistent with either possibility. The preamble alone makes clear that Customs decided that it would distribute "only" § 1677g interest.

Because Congress delegated to Customs only limited authority to administer the CDSOA, and required the agency to exercise that authority "by regulation," the agency is not entitled to any deference for its decision, announced in the preamble to the NFRM, that it would only distribute § 1677g interest.

## C.   Because Customs' Interpretation of "Interest" Is Unreasonable, It Is Owed No Deference

Where Congress has delegated authority to an agency to fill gaps in a statute through regulation, *Chevron* deference is appropriate only if the agency's action is "reasonable," *i.e.*, *not* arbitrary or capricious. *Nucor Corp. v. United States*, 927 F.3d 1243, 1248 (Fed. Cir. 2019). The Government errs, however in claiming here that its decision to withhold § 1505(d) interest is reasonable. Opp. Br. at 25-27.  As shown in Section I above, Customs' reading of "interest" and "all interest" as applying only to § 1677g interest is not reasonable because it "goes beyond the meaning that the" CDSOA "can bear." *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 229 (1994) (citing *Pittston Coal Group v. Sebben*, 488 U.S. 105, 113 (1988); *Chevron*, 467 U.S. at 843-43).

## 1.   Both § 1677g Interest and § 1505(d) Interest Accrue on Assessed but Unpaid AD/CV Duties

The Government contends its decision to withhold § 1505(d) interest is "logical" because that interest accrues on "*unpaid* AD/CV duties," which are not distributed under the CDSOA, and which the Government claims "contemplat[es] . . . transferring [only] paid AD/CV duties and [paid] 1677g interest to ADPs."  Opp. Br. at 26-27 (emphasis in original).  This is wrong, because (as explained above in Section I.B) both § 1677g interest and § 1505(d) interest accrue

on "unpaid" AD/CV duties.[13]   Further, Customs first applies any payment it receives from an importer or bond surety to collect as much of the combined § 1677g interest and § 1505(d) interest as possible, and then applies any remainder to collect the unpaid AD/CV duties.  *See* 19 C.F.R. § 24.3a.  In this regard, both types of interest are identical.  The Government's incorrect claim that § 1505(d) interest accrues on "unpaid" AD/CV duties while § 1677g interest accrues on "paid" duties underscores the unreasonableness of Customs' decision to distribute only the latter type of interest.

### 2.   No Public Comment on Customs' NPRM Supports the "Reasonableness" of its Decision to Withhold § 1505(d) Interest

The Government also contends that several public commenters approved of Customs' proposed "treatment" of interest in its notice of proposed rulemaking (NPRM), including its decision to withhold § 1505(d) interest.  Opp. Br. at 9-10.  This claim is wrong: the NPRM actually indicates that Customs intended to distribute both § 1505(d) interest and § 1677g interest, so it is not surprising that Customs received no comments on what was then, at best, a secret decision to withhold § 1505(d) interest.

The relevant provision of the Proposed Rule (§ 159.64(e), which is essentially the same in the Final Rule), does provide that Customs will distribute § 1677g interest, but is silent as to § 1505(d) interest.  Nevertheless, Customs' explanation of § 159.64(e) in the Proposed Rule's preamble states that "if there is any interest paid by the importer on any" AD/CV "duties billed in the liquidation process for the import entries, that interest" will be distributed.  66 Fed. Reg. at

---

[13] Section 1677g interest is charged on the amount by which an importer has underpaid a cash deposit of estimated AD/CV duties on an entry.  19 U.S.C. § 1677g.  When Customs determines at liquidation that such an underpayment has occurred, it must bill the importer (or surety) for both the additional duties and the § 1677g interest, which remains "unpaid" until Customs collects them from the importer or surety.  *See* 19 C.F.R. § 24.3a.

33,922.  As both § 1677g interest and § 1505(d) interest accrue on AD/CV duties "billed in the liquidation process," that explanation indicates that Customs, as of the issuance of its Proposed Rule, planned to distribute both types of interest.  While Customs made no material change to § 159.64(e) in its Final Rule, it replaced the quoted sentence from the Proposed Rule's preamble with this one in the Final Rule's preamble: "Thus only interest charged on antidumping and countervailing duty funds themselves pursuant to 19 U.S.C. § 1677g will be" distributed under the CDSOA.  66 Fed. Reg. 48,550.  As the Court has found, it was this comment in the Final Rule's preamble that put the public on notice that Customs would not distribute § 1505(d) interest.  *Adee Honey*, 450 F. Supp. 3d at 1373.  That Customs received no public comment on this as-of-then unknown decision cannot possibly support the "reasonableness" of that decision.

**D.**   **Customs' Failure to Provide Any Reason for Its Decision to Withhold § 1505(d) Interest While Promulgating Its Final Rule Renders It Arbitrary and Capricious**

The Government admits that the actual reason Customs decided to withhold § 1505(d) interest was because its ACS system was incapable of distributing that type of interest.  Opp. Br. at 7-8, 37-38.  The Government also acknowledges that it failed to include this reason in either the NPRM or NFRM, but claims that because Customs' "technical capabilities fall solely within the agency's experience and expertise . . . there was no reason for Customs to include a detailed discussion of its technology as part of the notice and comment process."  Opp. Br. at 37-38.  But the Government again is wrong, for it is a "basic" requirement of administrative rulemaking that "an agency must give adequate reasons for its decisions," and a failure to do so renders the agency's decision arbitrary and capricious.  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016).  Customs' failure to contemporaneously provide any reason for its decision in the NPRM or NFRM is thus fatal to its claim for deference.  *Id*.

The Government's claim that *Encino* is limited to situations where an agency reverses a longstanding statutory interpretation also is wrong.  Opp. Br. at 36.  *Encino* relies on *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281 (1974), which did not involve an agency reversal of a longstanding position.  *See id.*, 136 S. Ct. at 2125 (citing *Bowman Transp., Inc.,* 419 U.S. at 286).[14]  Likewise, subsequent decisions applying *Encino* have not been limited to situations involving the reversal of an existing agency position.  *See, e.g., Montgomery Co. v. FCC*, 863 F.3d 485, 491 (6th Cir. 2017) ("Thus, if an agency wants the federal courts to adopt (much less defer to) its interpretation of a statute, the agency must do the work of actually interpreting it.") (citing *Encino*, 136 S. Ct. at 2125).

The Government's reliance on *Smiley v. Citibank*, 517 U.S. 735 (1996) is misplaced. There, the Supreme Court deferred to the Office of the Comptroller of the Currency's interpretation of "interest" as a statutory term.  Opp. Br. at 32-33.   Customs' interpretation of "interest" is not at issue here, however, for the Court has decided that delinquency interest is a type of interest.  *See Adee Honey*, 450 F. Supp. 3d at 1373 ("[D]elinquency interest collected according to 19 U.S.C. § 1505(d) unquestionably is 'interest.'").  The issue here is whether the CDSOA's "*all*" interest includes § 1505(d) interest.

The Government also contends that the Court should defer to its interpretation of "all interest" because the Court deferred to Customs' interpretations of certain other provisions of the CDSOA in *Southern Shrimp Alliance v. United States*, 617 F. Supp. 2d 1334 (Ct. Int'l Trade

---

[14] The Government also incorrectly claims that the Supreme Court's *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co*., 463 U.S. 29 (1983), is also limited to situations involving agency reversals of longstanding positions.  Opp. Br. at 36-37.  The Court there, however, held that "an agency must cogently explain why it has exercised its discretion in a given manner" regardless of whether the agency is reversing a prior position or acting in the "first instance."  463 U.S. at 48-49.

2009).  Opp. Br. at 34-35.   But the Court did not find in *Southern Shrimp* that it was *required* to defer to Customs' interpretation under *Chevron*, but instead deferred to Customs' position under the far more permissive standard of *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *Southern Shrimp,* 617 F. Supp. 2d at 1345.  Under *Skidmore*, a court may defer to an agency's interpretation to the extent it has the "'power to persuade.'"  *See Facebook v. Windy City Innovations, LLC*, 973 F.3d 1321, 1352 (Fed. Cir. 2020) (quoting *Skidmore*, 533 U.S. at 528). Here, Customs' decision to withhold § 1505 interest was based on its administrative inability to divert it from the General Fund to the CDSOA special accounts, not an interpretation of the statute, and thus has no "power to persuade." *Id.*

Finally, none of the decisions the Government cites in support of its withholding of § 1505(d) interest, based on its technical inability to distribute it, actually do so.  Opp. Br. at 37. In *Armour v. City of Indianapolis,* 566 U.S. 673 (2012), disfavored landowners challenged on Equal Protection grounds a city ordinance that relieved only favored property owners of having to pay certain sewer project assessment fees.  *Id.* at 676-78.  The issue there was whether the *legislature* could take administrative convenience into account when making distinctions between the two types of property owners.  *Id.* at 680.  That case did not address whether a federal agency may interpret a statute based on its administrative convenience.

In *Pakfood Pub. Co. v. United States*, 753 F. Supp. 2d 1334 (Ct. Int'l Trade 2011), this Court considered whether Commerce employed a reasonable methodology to determine the number of foreign exporters that were required to participate as "mandatory respondents" in a periodic review of an AD/CV order.  *Id.* at 1337-38.  There was no question in that case that Commerce had the statutory discretion to determine an appropriate reasonable methodology.  *Id.*

at 1342.  The issue was the reasonableness of Commerce's methodology, not Commerce's interpretation of ambiguous statutory terms.  *Id.*

In *Consol. Edison Co. of N.Y., Inc. v. Abraham*, 314 F.3d 1299, 1304 (Fed. Cir. 2002), the Federal Circuit found that the U.S. Department of Energy had a rational basis for determining that a claimant was entitled to restitution for overcharges of crude oil price controls.  *Id.* at 1304.  Like *Armour* and *Pakfood*, *Consol. Edison* has nothing to do with *Chevron* or whether an agency may interpret an ambiguous statute based on what is most administratively convenient for the agency.  Thus, all three cases cited by the Government on this issue are inapposite.

Accordingly, because Customs failed to provide any contemporaneous explanation for its decision to withhold § 1505(d) interest – and because that decision was based not on the words of the statute, but purely on Customs' own administrative convenience – that decision is arbitrary and capricious, and thus is entitled to no deference under *Chevron*.  *Encino*, 136 S. Ct. at 2125.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for judgment on the administrative record and order Customs to distribute the delinquency interest the agency has wrongfully withheld from them.

Respectfully submitted,


/s/  Paul C. Rosenthal
PAUL C. ROSENTHAL
MICHAEL J. COURSEY
JOHN M. HERRMANN II
JENNIFER E. MCCADNEY
CAMERON R. ARGETSINGER
KELLEY DRYE & WARREN, LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400

*Counsel to Plaintiffs with the exception of Monterey Mushrooms, Inc.*

LOUIS S. MASTRIANI
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1133 Connecticut Ave., N.W.
Washington, DC 20036
(202) 467-6300

*Co-Counsel to Plaintiffs in A&S Crawfish v. United States, CIT No. 16-00131*

October 8, 2021

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**


       Pursuant to the Court of International Trade Standard Chambers procedures, undersigned counsel for Plaintiffs with the exception of Monterey Mushrooms, Inc. certify that this brief contains 6,879 words, including footnotes.  The word-count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2013.

                    Respectfully submitted,


                    /s/  Paul C. Rosenthal
                    PAUL C. ROSENTHAL
                    MICHAEL J. COURSEY
                    JOHN M. HERRMANN II
                    JENNIFER E. MCCADNEY
                    CAMERON R. ARGETSINGER
                    KELLEY DRYE & WARREN, LLP
                    3050 K Street, N.W., Suite 400
                    Washington, D.C.  20007
                    (202) 342-8400

                    *Counsel to Plaintiffs with the exception of*
                    *Monterey Mushrooms, Inc.*